# BLUE CROSS & BLUE SHIELD UNITED OF WISCONSIN, Plaintiff-Appellant,

## v.

# FIREMAN'S FUND INSURANCE CO. OF WISCONSIN and Stanley E. Altenbern, Defendants-Respondents-Petitioners.

Supreme Court

*No. 84–1853. Submitted on briefs February 9, 1987.—Decided May 15, 1987.*

(Also reported in 411 N.W.2d 133.)

For the plaintiff-appellant there was a brief by *Donald H. Piper, Terry J. Booth* and *Fellows, Piper & Schmidt,* Milwaukee.

For the defendants-respondents-petitioners there were briefs by *Paul R. Hoefle, Tamara A. Hayes* and *Frisch, Dudek and Slattery, Ltd.,* Milwaukee.

WILLIAM G. CALLOW, J. This is a review of a published decision of the court of appeals, *Blue Cross v. Fireman's Fund,* 132 Wis. 2d 62, 390 N.W.2d 79 (Ct. App. 1986), reversing a judgment of the circuit court for Waukesha county, Judge Robert T. McGraw, which dismissed, for failure to state a claim upon which relief may be granted, the subrogation complaint filed by Blue Cross & Blue Shied United of Wisconsin.

The question presented in this case is whether a subrogated insurer, to state a claim for relief, must allege that an insured who has settled with the tortfeasor has been made whole. Because we conclude that an insured who has settled his or her part of the claim against the tortfeasor does not have to be made whole before a subrogated insurer may bring a subrogation claim against a tortfeasor or his or her insurer, we hold that Blue Cross & Blue Shield United of Wisconsin (Blue Cross) has stated a claim for relief. Accordingly, we affirm the decision of the court of appeals.

This case is before us on a motion to dismiss for failure to state a claim upon which relief may be granted. Thus, the only facts are those stated in the complaint, which for the purposes of this review must be taken as admitted. *Kranzush v. Badger State Mutual Casualty Co.,* 103 Wis. 2d 56, 57, 307 N.W.2d

256 (1981). The Blue Cross complaint states the following facts.

On December 30, 1980, Kyle Adams was injured while riding as a passenger in a vehicle owned by Wisconsin Coach Lines, Inc., and operated by Stanley E. Altenbern. The injuries incurred by Adams were a result of the negligent operation of the vehicle by Altenbern. At the time of the accident, the vehicle operated by Altenbern was insured by Fireman's Fund Insurance Company of Wisconsin (Fireman's).

As a result of the accident, Kyle Adams sustained injuries which required hospital services and medical care. Pursuant to a contract for hospital services between Blue Cross and Robert Adams, father of Kyle, Blue Cross paid hospital charges on behalf of Kyle Adams, as dependent of Robert Adams, in the amount of $10,202.50. Blue Cross paid these charges and, therefore, became subrogated to the extent of the payment. Thereafter, on July 20, 1981, and again on November 4, 1982, Blue Cross notified Fireman's of its subrogation rights.

On December 24, 1982, Blue Cross learned that Kyle and Robert Adams had settled their personal injury claim for $60,000—$40,000 less than Fireman's policy limits. Furthermore, despite Fireman's knowledge of the subrogation claim of Blue Cross, the Adamses' claim was settled without settling or resolving Blue Cross's subrogation claim.

On March 2, 1983, Blue Cross initiated this action against Fireman's and Altenbern to recover the $10,202.50 which it paid on behalf of Adams. The trial court dismissed Blue Cross's complaint for failure to state a claim upon which relief could be granted because Blue Cross failed to allege that Adams had been made "whole" by the settlement with Fireman's.

According to the trial court, under *Rimes v. State Farm Mutual Automobile Insurance Co.,* 106 Wis. 2d 263, 316 N.W.2d 348 (1982), and *Garrity v. Rural Mutual Insurance Co.,* 77 Wis. 2d 537, 253 N.W.2d 512 (1977), an insured must be made whole before the insurer may recover its subrogated interest.

The court of appeals, in reversing the trial court, concluded that under this court's decision in *Vogt v. Schroeder,* 129 Wis. 2d 3, 383 N.W.2d 876 (1986), an allegation that the insured has been made whole is not essential to the subrogation claim of Blue Cross. *Blue Cross,* 132 Wis. 2d at 66. The court of appeals interpreted *Vogt* to hold that the rule of *Garrity* and *Rimes* (that the subrogee cannot recover until the subrogor is made whole) is not an absolute rule which applies in every case. According to the court of appeals, its application depends upon the application of equitable principles to the facts of the case. Thus, because the present case did not involve the same compelling equitable factor which defeated the subrogation right asserted in both *Rimes* and *Garrity* (the prospect of an insurer seeking funds from its own insured who had not been made whole), the court of appeals concluded that Blue Cross had stated a claim upon which relief could be granted. *Blue Cross,* 132 Wis. 2d at 65–66. On September 9, 1986, we granted Fireman's petition for review of the decision of the court of appeals.

As we noted earlier, this case is before us on a motion to dismiss for failure to state a claim for relief. Whether a complaint states a claim upon which relief may be granted is a question of law, and we need not defer to the decisions of the lower courts.

It is clear from our past cases that a subrogated insurer has a cause of action to enforce its subrogation rights against the tortfeasor's insurer despite the existence of a settlement between the injured party (subrogated insurer's insured) and the tortfeasor's insurer. *See Associated Hospital Service v. Milwaukee Automobile Mutual Insurance Co.,* 33 Wis. 2d 170, 147 N.W.2d 225 (1967). In such a situation, we have characterized the interests of the insurer and the insured as each owning separately a part of the claim against the tortfeasor. *Heifetz v. Johnson,* 61 Wis. 2d 111, 120, 211 N.W.2d 834 (1973); *Wilmot v. Racine County,* 136 Wis. 2d 57, 63–64, 400 N.W.2d 917 (1987).

Our characterization of the interest of a subrogated insurer and its insured as each owning a separate part of the claim against the tortfeasor is consistent with our earlier conclusion that a subrogated insurer retains a cause of action against the tortfeasor despite the existence of a settlement between the insured and the tortfeasor. Because an insured and a subrogated insurer each own separately part of the claim against the tortfeasor, a settlement or recovery by the insured operates only to satisfy the part of the claim owned by the insured. Because only the part of the claim owned by the insured is satisfied, the part of the claim owned by the subrogated insurer remains unsettled and may be sued upon by the subrogated insurer.

In the present case, Blue Cross acquired a subrogated interest in the Adamses' claim against the tortfeasor when it paid $10,202.50 on behalf of Kyle Adams for medical expenses incurred as a result of the accident. As the holder of a subrogated interest, Blue Cross owns a part of the claim against the tortfeasor.

Because Blue Cross owns a part of the claim which is separate from that owned by the Adamses, the settlement between the Adamses and Fireman's[1] operated only to extinguish the part of the claim owned by the Adamses. Absent some indication that the Adamses had the authority to settle the part of the claim owned by Blue Cross, the Adamses' agreement with Fireman's could not and did not impair Blue Cross's right to enforce its part of the claim. Because there is nothing to indicate that Blue Cross agreed to the settlement, Blue Cross has a cause of action to recover its subrogated interest from the tortfeasor and its insurer.

Fireman's contends, however, that under our rulings in *Garrity, supra,* and *Rimes, supra,* the subrogated insurer may not recover until it is demonstrated that the insured has been made whole. Although this argument is facially correct, it ignores our later decision in *Vogt, supra,* in which we concluded that neither *Garrity* nor *Rimes* established a per se rule that the insured must be made whole before a subrogated insurer could recover. *Vogt,* 129 Wis. 2d at 11–13.

In *Vogt* we recognized that the rule from *Garrity* and *Rimes* was not the absolute rule that an insured must be made whole before an insurer could recover but, instead, that subrogation is an equitable doctrine whose application depends upon a just resolution of a dispute under a particular set of facts. *Vogt,* 129 Wis. 2d at 11–13. Specifically, in both *Garrity* and *Rimes* we were concerned primarily with the equities of an insurer competing with its own insured for funds

[1]According to the pleadings, Blue Cross was not a party to the settlement.

which were insufficient to make the insured whole.[2] Because the insurer had received a premium to accept the risk of loss, we concluded that, as between the insurer and its insured, any loss should be borne by the insurer. Thus, in *Garrity* and *Rimes,* where a recovery by the insurer would have decreased the recovery of its insured, we concluded that the insurer could not recover unless its insured had been made whole.

We agree with the court of appeals that the compelling equitable factor which defeated the subrogation right asserted in both *Garrity* and *Rimes* (the prospect of an insurer competing with its own insured for funds which are insufficient to make the insured whole) is not present in this case. There are two factors which combine to distinguish the present case from *Garrity* and *Rimes.* First, Blue Cross in this action is not seeking to recover any funds from the Adamses. The complaint filed by Blue Cross seeks recovery from the tortfeasor and his insurer; it does not look to the funds of its insured as a source of recovery. Thus, the insurer is not directly competing with its insured for a limited set of funds. Second, the Adamses had already settled their part of their claim with the tortfeasor before Blue Cross initiated its suit against the tortfeasor.

---

[2]Although *Garrity v. Rural Mutual Insurance Co.,* 77 Wis. 2d 537, 253 N.W.2d 512 (1977), relied upon an equitable concern that the injured party be made whole prior to its insurer recovering, it also recognized a separate equitable policy which focuses on the fact that the wrongdoer should not be allowed to avoid paying damages while another, the injured party's insurer, is required to do so.

■ A suit brought by an insurer against the tortfeasor does not directly take money from its insured. However, where the insured has not settled with the tortfeasor prior to the initiation of a suit by the insurer, any recovery by the insurer could reduce the amount available to compensate the insured (injured party).[3] It is in this type of situation, when an insurer's recovery would diminish the amount of money available to fully compensate its insured, that this court in *Garrity* and *Rimes* held that an insurer is prohibited from recovering against the tortfeasor unless its insured had been made whole.[4] As in this case, the existence of a prior settlement by the injured party removes the possibility that an insurer's recovery would reduce the amount of money available to fully compensate its insured. Here the injured party has already recovered through the settlement. Any later recovery by the injured party's insurer would not reduce the money its insured received under the

---

[3]Such a reduction in the insured's recovery would occur in a case in which the tortfeasor's assets were limited to $100,000, and the damages to the injured party were $200,000. If the subrogated insurer had a claim for $30,000 and was allowed to recover this amount prior to any suit by the injured party, the amount of money left to compensate the injured party would decrease from $100,000 to $70,000.

[4]Our conclusion that a subrogated insurer may not recover prior to a recovery or settlement by its insured does not alter the rights provided a subrogated insurer by sec. 803.03(2)(a), Stats., to initiate and to enforce its subrogated interest. Under sec. 803.03(2)(a) a subrogated insurer may initiate an action to recover its subrogated interest provided that it joins its insured as a party to the action. We are satisfied that, by requiring the subrogated insurer's insured be a named party, the interest of the insured is protected under the *Garrity/Rimes* doctrine.

settlement.[5] Because Blue Cross is not seeking funds from its insured and its recovery would not diminish the funds available to its insured, we conclude that Blue Cross does not have to allege that the Adamses were made whole to state a claim upon which relief can be granted.

Fireman's argument that the existence of a cause of action with the subrogated insurer will reduce settlement offers to the injured party and thus reduce funds which would have otherwise gone to the injured party is spurious. An injured party's recovery is not constrained by the existence of the subrogated insurer's cause of action. The injured party is free to accept a settlement offer if the injured party finds the offer is adequate or the injured party may reject the settlement and proceed to trial to be made whole. This choice remains entirely with the injured party and is not affected by the existence of a cause of action with the subrogated insurer. Thus, regardless of the existence of an independent claim in the subrogated insurer, the injured party retains the ability to be made whole.

■

Fireman's further argues that the Adamses' agreement to indemnify Fireman's for any claim made by Blue Cross against Fireman's prohibits Blue Cross from enforcing its separate part of the claim against Fireman's. We disagree. As we noted earlier, because the existence of a claim by Blue Cross will not result in a competition between it and its insured for a limited set of funds, Blue Cross has an independent

---

[5]Fireman's argument that the indemnification agreement results in a diminution in the insured's recovery is treated later in this opinion.

claim which it may enforce against the tortfeasor or the tortfeasor's insurer, regardless of whether the injured party has been made whole. Were we to recognize that the existence of an indemnity agreement would bar any claim by a subrogated insurer, all subrogation claims could be barred through the use of indemnity agreements, and our recognition of an independent claim in the insurer would be meaningless. Because such an indemnification agreement essentially attempts to circumvent an insurer's subrogation rights by placing the responsibility for the tortfeasor's wrong on the victim, we decline to hold that such agreements impair the otherwise valid subrogation right.[6]

*By the Court.*—The decision of the court of appeals is affirmed.

---

[6]Although we do not reach the issue of whether such indemnification clauses are enforceable between the tortfeasor and the injured party, we note that at least one jurisdiction has determined that this type of indemnification agreement is void as against public policy. *Allum v. MedCenter Health Care, Inc.,* 371 N.W.2d 557, 560 (Minn. Ct. App. 1985).